UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| E. SCOTT LANEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-306-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RICHARD A. GETTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On June 25, 2012, Plaintiff Scott Laney was terminated from his employment with Defendant Stoner Mill Farm, LLC ("Stoner Mill"). Before the firing, an investigator employed by Stoner Mill and its attorney suggested that Laney take a polygraph examination. Laney refused and subsequently sued, claiming that the requested polygraph violated his rights under the Employee Polygraph Protection Act ("EPPA"). Because Laney would have been terminated regardless of whether he agreed or refused to submit to the polygraph, he cannot prevail under one section of the act, 29 U.S.C. § 2002(3).

However, the undisputed facts show that the defendants' actions likely violate another provision of the act, 29 U.S.C. § 2002(1). Under Rule 56(f) of the Federal Rules of Civil Procedure, the Court will give the parties notice and time to respond to the issue of whether

Laney is entitled to judgment as a matter of law on his § 2002(1) claim.[1] The defendants' motion for summary judgment will be granted, in part, and denied, in part.[2]

**I.**

Plaintiff E. Scott Laney was employed as an at-will employee by Defendant Stoner Mill Farm ("Stoner Mill"), owned by Robert and Nancy Harney, from 2006 until he was terminated on June 25, 2012. [Record No. 1, p. 4 ¶18] Laney was hired by then-manager of Stoner Mill, John Walden.[3] [Record No. 42-1, pp. 26-27] During his employment, disputes arose between Nancy Harney and Walden that ultimately resulted in Walden's termination and at least three civil actions.[4] *See, e.g. Harney et al. v. Walden*, Civil Action No. 10-200-JBC (E.D. Ky.); *Walden v. Harney et al*, Civil Action No. 5:10-204-JBC (E.D. Ky.); *Harney et al. v. Walden*, Civil Action No. 12-CI-2829 (Fayette County Circuit Court). Essentially, the Harneys accused

---

[1] Notice pursuant to Rule 56(f) was also given to the parties during the Court's May 5, 2014, final pretrial conference.

[2] The parties have also filed a number of pre-trial motions, including: (i) Defendant Stoner Mill Farm's motion *in limine* to exclude health evidence [Record No. 61]; (ii) Defendants Getty and Borne's motion to exclude evidence of prior polygraphs [Record No. 62]; (iii) the defendants' motion to preclude any reference to or insinuation of a fraudulently manufactured email [Record No. 63]; (iv) Stoner Mill's motion *in limine* to exclude relationship evidence [Record No. 64]; and (v) the plaintiff's motion to strike the motion to preclude reference to the manufactured e-mail [Record No. 65]. These motions do not substantively affect the Court's resolution of the defendants' motion for summary judgment, nor do they affect the Court's analysis of the plaintiff's 29 U.S.C. § 2002(1) claim. Accordingly, they will be denied, as moot. In the event that the plaintiff's claims are not resolved in full, the parties may renew these motions for the Court's consideration.

[3] Walden's responsibilities included "holding and maintaining Ms. Harney's valuable Western artifacts on behalf of Stoner Mill." [Record No. 41-1, p. 2]

[4] The dispute involving the Harneys and Walden is described in unnecessary detail in Laney's response brief. [*See* Record No. 70]

Walden of stealing various items from Stoner Mill, including artifacts and other valuable items. [Record No. 60-2]

Walden was fired in April 2010, after which he filed suit against Stoner Mill and Nancy Harney. [Record No. 70-9, p. 11] During that litigation, Walden continued to live on the farm until he was "locked out" on June 15, 2012. [*Id.*, p. 14] Stoner Mill claims that around this time, invoices, receipts, and papers regarding the stolen items also disappeared. [Record No. 70, p. 3] On the morning of Friday, June 22, 2012 (approximately one week after Walden left the farm) Laney was advised by his supervisor and then farm manager, Trinidad Arredondo, to stop work and attend an interview. [Record No. 70, p. 11] Arredondo stated to Laney that "he didn't know what it was about" and Laney had no prior notice. [Record No. 70-8] The interview was conducted by Defendants Richard Getty and Albert Borne. At the time, Getty was counsel for Stoner Mill. Borne, a private investigator, had been hired by Stoner Mill to investigate the missing items, including the missing invoices, receipts, and documents. [Record No. 70-9, p. 8]

Unknown to Laney, Defendants Getty and Borne recorded the parties' discussions. [Record No. 60-9] During the interview, Laney was questioned regarding the stolen artifacts and documents. [*See generally id.*] After Borne asked Laney if he took the artifacts or documents, Laney answered "I absolutely didn't take it. Do you want me to take a lie detector test? I mean, I would not steal from Nancy or take anything." [*Id.*, p. 19 ln.23-25] Borne responded, "[w]ell actually, that was going to be my next question quite honestly." [*Id.*, p. 20 ln. 1-2] Laney then responded, "[n]o, I'm not going to take a lie — I mean I didn't take it." [*Id.*, ln. 3-5]

After this exchange, the subject of a polygraph examination was brought up two other times.

    Mr. Getty:    It would help, if you let, you know, us bring this guy over from Louisville, he's a former FBI agent, and give you a polygraph.

    Mr. Laney:    Well, I mean, I know polygraphs aren't admissible and you know.

    Mr. Getty:    Yeah, I know, but I've used them and they're pretty damn reliable.

    Mr. Borne:    It depends on who's giving it, but this guy is an ex-FBI and he really knows his stuff. He's probably the best in the state.

[*Id.*, p. 24 ln. 8-17]

Later in the interview, Getty again broached the subject:

    Mr. Getty:    It would help us, Scott, if you would agree. Just think about whether we can get this guy to give you a polygraph.

    Mr. Laney:    Okay.

    Mr. Getty:    I mean, you're not obligated to do it —

    Mr. Laney:    I know.

    Mr. Getty :    — but, you know, that would be helpful to us.

    Mr. Laney:    Well, I'll probably talk to a lawyer because you're accusing me of something that I didn't do.

[*Id.*, pp. 46-47 ln. 3-14]

Borne gave Laney a ride back to his work after the interview concluded. [Record No. 70-8, p. 6] During the trip, Borne stated "you really need to think about taking a lie detector test." [*Id.*] Laney responded that he would "think about it." [*Id.*] Laney returned to work on June 25, 2012. After he arrived, Arredondo approached him and stated, "I don't know what went on

Friday, but the Harneys no longer want you on the farm and your position is terminated." [*Id.*, p. 8]

On October 1, 2012, Laney filed suit against Defendants Getty, the Getty Law Group, Borne, and Stoner Mill, alleging violations of the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2002(1), by requesting and suggesting that he take a lie detector test. [Record No. 1, p. 4 ¶19] Laney also claims that the defendants violated § 2002(3) of the act by terminating him for his refusing, declining or failing to take a lie detector test. [*Id.*, ¶22] Laney requests actual and consequential damages, including lost wages, punitive damages, and an award of attorney's fees and expenses. [*Id.*, ¶26]

**II.**

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**III.**

The defendants argue that the plaintiff's § 2002(3) wrongful termination claim fails because the record conclusively establishes that the decision to terminate Laney was made prior to the June 22, 2012 interview. Thus, they assert that there is no causal link between Laney's failure to submit to a polygraph and his subsequent termination. The defendant also contend that they are entitled to summary judgment on the plaintiff's § 2002(1) claim because Laney has not shown that any alleged violation of the EPPA resulted in damages.

**A.     29 U.S.C. § 2002(3)**

The EPPA states that it is unlawful for an employer to "discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against" an employee who refuses to take a lie detector test. 29 U.S.C. § 2002(3). An "employer" is broadly defined under the EPPA as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."[5] 29 U.S.C. § 2001(2). The standard that applies to EPPA claims is muddled. Further, the Sixth Circuit has side-stepped the issue of whether the mixed-motive framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), applies to EPPA claims. *Bass v. Wendy's of Downtown, Inc.*, 526 F. App'x 599, 2013 WL 2097359 (6th Cir. 2013) (unpublished) ("Although it is not clear that *Price Waterhouse* is necessarily the appropriate test, the *Price Waterhouse* framework places a relatively light burden on plaintiffs and alternative tests would not aid — indeed they would likely harm — [the

---

[5]     The defendants have abandoned their argument that Getty and Borne were not employers as defined by the EPPA. The broad language of the EPPA's definition of employer encompasses Getty and Borne and their respective firms. By their own admission, they were acting Stoner Mill's interest in their dealings with Laney.

plaintiff's] claim."). Without deciding the issue, the Sixth Circuit implicitly approved the application of a mixed-motive framework at the summary judgment stage of an EPPA claim. *Id.* at 602-03; *see also Worden v. SunTrust Banks, Inc.*, 549 F.3d 334 (4th Cir. 2008) (applying the mixed-motives framework to a claim brought under the EPPA).

"Under the *Price Waterhouse* framework, a plaintiff first must offer evidence that the discriminatory factor — in this case the polygraph — was a motivating factor in the adverse employment action. . . . Once the plaintiff has made a *prima facie* case, the employer can avoid liability by proving that it would have made the same decision in the absence of the discriminatory motivation." *Id.* at 603 (internal citation omitted).[6] Laney relies primarily on the temporal proximity of the suggestion that he take a polygraph and his termination in an attempt to satisfy his burden under § 2002(3). Assuming that temporal proximity alone establishes a *prima facie* case under § 2002(3), the burden shifts to the defendants to show that Laney would have been terminated regardless. *See Worden*, 549 F.3d at 343.

The defendants have produced evidence which conclusively establishes that Laney would have been terminated notwithstanding his failure to take a polygraph examination. Nancy Harney claims that, on June 21, 2012, she called Defendant Borne and asked him if he would interview Laney, because she wanted to "let him go." [Record No. 70-9, p. 18; *see also* Record No. 60-5, p. 3.] Further, the defendants have produced an e-mail dated June 21, 2012, sent from

---

[6] The defendants argue that Laney never truly refused to take a lie detector test, based on his unequivocal answers. However, a reasonable juror could find that Laney's statements of "No, I'm not going to take a lie . . . " amounted to a refusal to take a polygraph. Despite the fact that Laney did not finish his thought, he clearly said "no" to the question of the lie detector test. Further, a reasonable juror could find that Laney's other responses amounted to a refusal to submit to a polygraph, even though Laney later said that he would "think about it." The Court accepts for the purposes of this motion that Laney refused to take a lie detector test within the meaning of the EPPA.

Borne to Getty and a third party that memorializes Nancy Harney's intention to terminate Laney prior to June 22, 2012. [Record No. 60-8] The e-mail states, in pertinent part that "Nancy [Harney] just called and asked me when she could get Scott [Laney] interviewed and off the farm. I think Nancy is feeling a little insecure with Scott on the property. Let me know." [*Id.*] This e-mail, dated a day before the interview and four days prior to Laney's termination, supports the defendants' assertion that causation is lacking.

Stoner Mill contends that the decision to terminate Laney occurred in 2010, when Nancy Harney and Arredondo determined that all employees hired under Walden should be fired. [Record No. 60-8] Nancy Harney testified that she did not terminate Laney at that time for fear of creating a hostile witness in the midst of ongoing litigation with Walden. [Record No. 70-9, p. 20] In addition, she swore, *via* affidavit, that they might learn valuable information about Walden and the missing property. [Record No. 60-5]

In addition to the foregoing matters, the contention that the decision to terminate Laney was made prior to June 22, 2012, is supported by other evidence. [*See* Record No. 60-7.] For example, Arredondo states that he discussed terminating Laney in 2010, and affirms that he was informed of Nancy Harney's final decision to terminate Laney prior to June 22, 2012.[7] [*Id.*, pp. 3-4]

Laney relies solely on the fact that he was fired the next business day after the interview to show that his failure to submit to a polygraph was the reason he was fired. But even where

---

[7] Laney attacks Arredondo's affidavit by labeling it inconsistent with his June 25, 2012 surprise at delivering the news that Laney had been terminated from the farm. However the plaintiff's impression of Arredondo's statement does not create a disputed issue of material fact.

temporal proximity is enough to establish a *prima facie* case, it is not enough to overcome the significant probative evidence that the defendants have produced. Although Laney attacks the defendants' evidence (calling it fabricated, fraudulent, and a "sham"), he has not offered any evidence beyond the timing of the termination to establish causation. His assertion that the "defense in this case is tainted from top to bottom" and his contention that "e-mails can be easily fabricated and backdated" are pure speculation unsupported by any evidence upon which this Court can rely. [Record No. 70, p. 29]; *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310-12 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation."); *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005) (unbelievable evidence does not create a factual dispute such that summary judgment should be denied).

Where, as here, the record is clear that an employer would have terminated an employee-plaintiff without any mention of a polygraph, summary judgment is appropriate.[8] *See Worden*, 549 F.3d at 343. Laney has failed to show the requisite link between Laney's refusal to submit to a polygraph and his termination. Instead, the evidence conclusively establishes that the decision to terminate Laney was made prior to the June 22, 2012 interview. [*See* Record No. 60-3, 60-4, 60-5, 60-6, 60-7, and 60-8.] As a result, the defendants are entitled to summary judgment on the plaintiff's § 2002(3) claim.

---

[8] The fact that Laney was a satisfactory employee is not probative of whether his termination was a result of his failure to submit to a polygraph.

### B. 29 U.S.C. § 2002(1)

The defendants also argue that they are entitled to summary judgment regarding he plaintiff's claim brought pursuant to § 2002(1).[9] Under that provision, it is unlawful for an employer "directly or indirectly, to require, suggest, or cause any employee or prospective employee to take or submit to any lie detector test." § 2002(1). "Because the statute is phrased in the alternative, its plain language prohibits an employer from requesting or suggesting that an employee submit to a polygraph exam, even where the test if ultimately not administered and no adverse employment action is taken as a consequence." *Polkey v. Transtecs Corp.*, 404 F.3d 1264, 1267-68 (11th Cir. 2005).

The defendants contend that they are entitled to summary judgment on this claim because they did not suggest or request that Laney take a lie detector test. However, a review of the interview between Defendants Borne and Getty and Plaintiff Laney establishes that this assertion is incorrect. [Record No. 60-9] The relevant facts are not disputed. [*Id.*] The issue of a polygraph was first brought up by Laney by asking, "[d]o you want me to take a lie detector test? I mean, I would not steal from Nancy or take anything." [*Id.*, p. 19 ln. 23-25] Borne responded by indicating that his next question was going to be whether Laney would agree to take a polygraph examination. [*Id.*, p. 20 ln. 1-2] In response, Laney refused. [*Id.*, ln. 3-5] If that had been the only mention of a polygraph during the interaction, the defendants might be entitled to summary judgment regarding this claim. *See, e.g. Watson v. Drummond Co.*, 436 F.3d 1310 (11th Cir. 2006) (an employer was entitled to summary judgment on employee's § 2002(1) claim

---

[9] Not much has changed since the Fourth Circuit noted the "paucity" of case law interpreting the EPPA. *See Worden*, 549 F.3d at 340.

where a polygraph was offered to employee after a request by the union to benefit the employee by providing an opportunity to prove his innocence). But this was not the only time that a polygraph was suggested or requested.

Getty and Borne unequivocally requested that Laney submit to a polygraph three other times. [*See* Record No. 60-9, p. 46 (Getty: "It would help us, Scott, if you would agree. Just think about whether we can get this guy to give you a polygraph."); *Id.*, p. 24 (Getty: "It would help, if you let, you know, us bring this guy over from Louisville, he's a former FBI agent, and give you a polygraph.); Record No. 70-8, p. 6 (Borne: "you really need to think about taking a lie detector test.)."] Based on the plain language of the statute, the defendants are not entitled to summary judgment because they did violate § 2002(1) of the EPPA by requesting and/or suggesting that Laney take a polygraph. *See Veazey v. Communications & Cable, Inc.*, 194 F.3d 850, 860 (7th Cir. 1999) (The EPPA is intended to be interpreted broadly.). *See also Polkey*, 404 F.3d at 1268 ("Because the statutory text clearly prohibits a covered employer's request or suggestion that an employee submit to a lie detector exam, the EPPA's language both begins and ends [the] inquiry.").

The defendants also argue that the plaintiff's § 2002(1) claim fails because there are no damages stemming from the alleged violation. Unfortunately, there is a dearth of case law regarding the EPPA generally, and this provision specifically. *See Polkey*, 404 F.3d at 1268 n.5 ("Because the EPPA's broad prohibitions have virtually eliminated polygraph exams from the workplace, there is little precedent interpreting the statute."). The defendants rely on the Sixth Circuit's decision in *Bass* to support their contention that summary judgment is appropriate

regarding Laney's § 2002(1) claim. In *Bass*, a pro se litigant brought a claim under § 2008 of the EPPA after his employer disclosed the results of his polygraph examination. 526 F. App'x at 601. The Sixth Circuit upheld the district court's grant of summary judgment, in part because the plaintiff did not show that he had suffered any harm as a result of the employer's unlawful disclosure of his polygraph examination. *Id.* at 601.

Here, Laney's Complaint and testimony indicates that he seeks lost wages, future lost wages, punitive damages, and legal fees and expenses.[10] [Record No. 41-3, pp. 17-18] He also asserts that nominal damages are available to him under the EPPA. [Record No. 60-1, p. 13 n.7] The defendants argue that these damages do not stem from the defendants' suggestion that Laney take a polygraph examination. Thus, they contend that he has failed to allege that he suffered any harm as a result of the defendants' suggestion or request. [Record No. 60-1, p. 13]

The defendants' broad interpretation of *Bass* contravenes the plain language of the EPPA. *See* 29 U.S.C. §§ 2002(1), 2005(c) (stating that an employer is liable for appropriate legal or equitable relief, including, but not limited to, payment of lost wages and benefits and costs, including attorney's fees for the prevailing party). Further, accepting the defendants' reading of *Bass'* cursory discussion of damages would render § 2002(1) virtually meaningless. *Bass*, 526 F. App'x at 601. *Bass* concerned a separate provision of the EPPA and does not mention the availability of nominal damages. *See id.* Here, the undisputed factual evidence establishes a technical violation of the EPPA. Laney has requested nominal damages as well as costs and

---

[10] Legal fees and expenses are termed costs under the EPPA. 29 U.S.C. § 2005(c)(3).

attorneys' fees that are authorized under the EPPA.[11]  Accordingly, the defendants are not entitled to judgment as a matter of law on Laney's § 2002(1) claim.

Finally, the Court rejects the plaintiff's contention that he is entitled to an award of punitive damages.  *See Mennen v. Easter Stores*, 951 F. Supp. 838 (N.D. Iowa) (holding that even if punitive damages are available to a plaintiff under 29 U.S.C. § 2005(c)(1), the plaintiff failed to establish malice or the reckless indifference to the federally protected rights of an aggrieved individual). The relevant evidence supporting an award of punitive damages is simply the violation of the EPPA and his subsequent termination. [Record No. 60-2, p. 19]  The record is devoid of facts that would support the requisite finding that the defendants actions were malicious, willful, or recklessly indifferent to his federally protected rights.  Accordingly, the plaintiff's claim for punitive damages will be dismissed.

**IV.**

For the reasons stated above, it is hereby

**ORDERED** as follows:

(1) Defendants Albert W. Borne, Borne Investigations, Inc., Richard A. Getty, Stoner Mill Farm, LLC, and the Getty Law Group, PLLC's motion for summary judgment on Plaintiff E. Scott Laney's claim under 29 U.S.C. § 2002(3) claim [Record No. 60] is **GRANTED**.  The defendants' motion for summary judgment on the plaintiff's § 2002(1) claim [Record No. 60] is **DENIED**.  Additionally, the plaintiff's claim for punitive damages is **DISMISSED**, with prejudice.

---

[11] Laney's request for attorneys' fees is contained in the Complaint, while the request for nominal damages is contained in a supplementation. [*See* Record No. 87, p. 6.]

(2) Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the parties are **NOTIFIED** that Plaintiff E. Scott Laney may be entitled to summary judgment on his 29 U.S.C. § 2002(1) claim. The parties are **DIRECTED** to file supplemental briefs regarding this issue within fourteen (14) days of the entry of this Memorandum Opinion and Order. The supplemental briefs shall not exceed five (5) pages in length.

(3) Within fourteen (14) days of the entry of this Memorandum Opinion and Order, Plaintiff E. Scott Laney is **DIRECTED** to file a separate memorandum outlining the costs incurred prior to the date that an offer of judgment was made, pursuant to Rule 68(d) of the Federal Rules of Civil Procedure. The defendants shall be given seven (7) days thereafter to object to the plaintiff's memorandum regarding costs.

(4) Defendants' motions *in limine* [Record No. 61, 62, 63, and 64] are **DENIED**, as moot.

(5) Plaintiff E. Scott Laney's Motion to Strike [Record No. 65] is **DENIED**, as moot.

(6) The trial of this matter is **CANCELED**, subject to intervening orders.

This 5th day of May, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge