UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| E. SCOTT LANEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-306-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RICHARD A. GETTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Previously, the Court granted partial summary judgment in favor of the defendants concerning Plaintiff E. Scott Laney's wrongful termination claim under 29 U.S.C. § 2002(3). [Record No. 106] At the same time, the Court gave the parties notice pursuant to Rule 56(f) of the Federal Rules of Civil Procedure that Laney was likely entitled to summary judgment on the defendants' alleged violation of the Employee Polygraph Protection Act ("EPPA"). [*See id.*]

The parties have now filed supplemental briefs under Rule 56(f) in accordance with the Court's directive. [Record Nos. 108, 111, 112] Additionally, the defendants have moved for costs and attorneys' fees, claiming that they are the prevailing parties under the EPPA. [Record No. 110] For the reasons set forth below, the Court will grant summary judgment in favor of Laney on his claim under the EPPA, and will deny the defendants' motion for costs and fees.[1]

---

[1]     Plaintiff Laney's social security number was provided in two of the defendants' filings in direct violation of the Court's redaction policy. [*See* Record No. 29-4, Record No. 60-9.] Accordingly, the Court will seal these filings and the defendants will be directed to file a redacted version of the transcript without the private information being included.

# I.

The factual history of this case is discussed at length in the Court's earlier opinion. [*See* Record No. 106.] Plaintiff Laney was employed by Defendant Stoner Mill Farm ("Stoner Mill"), owned by Robert and Nancy Harney, from 2006 until he was terminated on June 25, 2012. [Record No. 1, p. 4 ¶18] Defendants Al Borne and Richard Getty were hired by Stoner Mill to investigate Native American and Western artifacts that Nancy Harney collected, and which were stolen in 2010, allegedly by former Stoner Mill manager John Walden. [Record No. 106, p. 3] During one of the civil cases initiated by Nancy Harney against then-terminated John Walden, invoices and receipts that demonstrated the purchase and ownership of the missing artifacts were disclosed, and copies were exchanged. [Record No. 33] Stoner Mill claims that some of those documents went missing "at some point prior to June 22, 2012." [Record No. 60-1, p. 2 n.2] On June 22, 2012, Borne and Getty interviewed Laney in connection with the underlying litigation relating to the missing artifacts and documents. [*Id.*, p. 2]

During the interview, Borne asked Laney if he took those documents and other items from the farm. Laney answered, "I absolutely didn't take it. Do you want me to take a lie detector test? I mean, I would not steal from Nancy or take anything." [Record No. 60-9, p. 19 ln. 23-25] Borne responded, "[w]ell actually, that was going to be my next question quite honestly." [*Id.*, p. 20 ln. 1-2] Laney then responded, "[n]o, I'm not going to take a lie — I mean I didn't take it." [*Id.*, ln. 3-5]

The subject of a polygraph examination was subsequently brought up by the defendants several times over the course of the recorded interview.

| Mr. Getty: | It would help, if you let, you know, us bring this guy over from Louisville, he's a former FBI agent, and give you a polygraph. |
|---|---|
| Mr. Laney: | Well, I mean, I know polygraphs aren't admissible and you know. |
| Mr. Getty: | Yeah, I know, but I've used them and they're pretty damn reliable. |
| Mr. Borne: | It depends on who's giving [the test], but this guy is an ex-FBI and he really knows his stuff. He's probably the best in the state. |

[*Id*., p. 24 ln. 8-17]

Later, Getty again broached the subject:

| Mr. Getty: | It would help us, Scott, if you would agree. Just think about whether we can get this guy to give you a polygraph. |
|---|---|
| Mr. Laney: | Okay. |
| Mr. Getty: | I mean, you're not obligated to do it — |
| Mr. Laney: | I know. |
| Mr. Getty : | — but, you know, that would be helpful to us. |
| Mr. Laney: | Well, I'll probably talk to a lawyer because you're accusing me of something that I didn't do. |

[*Id*., pp. 46-47 ln. 3-14]  Borne later told Laney, "you really need to think about taking a lie detector test."  [*Id.*]  Laney responded that he would "think about it."  [*Id.*]  Laney was terminated on June 25, 2012.  [*Id*., p. 8]

Laney filed suit against Getty, the Getty Law Group, Borne, Borne Investigations, and Stoner Mill.  He alleged that the defendants violated the EPPA, 29 U.S.C. §§ 2002(1) and 2002(3), by requesting and suggesting that he take a lie detector test and then terminating his employment as a result of his refusal to submit to the examination.  [Record No. 1, p. 4 ¶19]

After a hearing, the Court granted partial summary judgment in favor of the defendants on Laney's claim that he was terminated for his refusal to take a polygraph. Among other things, the Court found that the defendants had established that the decision to terminate Laney was made prior to the date of the interview. [Record No. 106]

Based on undisputed evidence that the defendants requested and suggested that Laney submit to a polygraph, the Court notified the parties under Rule 56(f) of the Federal Rules of Civil Procedure that the plaintiff was likely entitled to summary judgment on his remaining claim. [*See id.*] The parties have now filed their supplemental briefs under Rule 56(f). [Record Nos. 108, 111, 112]

## II.

After giving notice and a reasonable time to respond, a court may grant summary judgment in favor of a nonmoving party. Fed. R. Civ. P. 56(f). Summary judgment is appropriate when there are no genuine disputes regarding any material facts and where a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the party against whom judgment is rendered. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the

evidence in the light most favorable to the party against whom summary judgment is rendered. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III.

### A.     Laney is entitled to summary judgment based on the defendants' violation of the EPPA.

Under the EPPA, it is unlawful for an employer "directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test." § 2002(1). "Because the statute is phrased in the alternative, its plain language prohibits an employer from requesting or suggesting that an employee submit to a polygraph exam, even where the test is ultimately not administered and no adverse employment action is taken as a consequence." *Polkey v. Transtecs Corp.*, 404 F.3d 1264, 1267-68 (11th Cir. 2005). The EPPA is intended to be interpreted broadly. *Veazey v. Communications & Cable, Inc.*, 194 F.3d 850, 860 (7th Cir. 1999). "Because the statutory text clearly prohibits a covered employer's request or suggestion that an employee submit to a lie detector exam, the EPPA's language both begins and ends [the] inquiry." *Polkey*, 404 F.3d at 1268.

Here, Getty and Borne , while acting on behalf of Stoner Mill, unequivocally requested that Laney submit to a polygraph at least three times. [*See* Record No. 60-9, p. 46 (Getty: "It would help us, Scott, if you would agree. Just think about whether we can get this guy to give you a polygraph."); *Id.*, p. 24 (Getty: "It would help, if you let, you know, us bring this guy over from Louisville, he's a former FBI agent, and give you a polygraph.); Record No. 70-8, p. 6 (Borne: "you really need to think about taking a lie detector test.).")] Based on the plain language

-5-

of the statute, the defendants violated § 2002(1) of the EPPA by requesting and suggesting that Laney take a polygraph.

Despite these clear requests and suggestions, the defendants seek to avoid liability under the EPPA by arguing that the plaintiff failed to adequately request nominal damages and that they are entitled to the "ongoing investigation" exemption under the EPPA. [*See* Record Nos. 111, 112.] Stoner Mill separately argues that it should not be held liable for the actions of Borne and Getty because violating the EPPA was not within the scope of their employment.[2] [Record No. 112, p. 4]

### i.    Nominal Damages

The defendants contend that Laney is not entitled to summary judgment on his § 2002(1) claim because he did not properly request nominal damages. In his Complaint, Laney requests monetary damages, costs, expenses, and attorney's fees, and "any and all other relief to which Plaintiff may be entitled." [Record No. 1, p. 5] But Laney's failure to explicitly request nominal damages in his Complaint is not dispositive. Unlike the cases cited by the defendants, this is not an instance where nominal damages were never mentioned by the plaintiff until after they could be awarded, or where they were never requested at all. *See Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 240 (1st Cir. 2006) (holding that a plaintiff was not entitled to seek nominal damages where such request was made three months after the jury's verdict); *Davis v. District of*

---

[2]    The defendants also re-assert several arguments that the Court has previously addressed. [*See* Record No. 106] For example, the Court has already addressed the parties' arguments regarding the applicability of *Bass v. Wendy's of Downtown, Inc.*, 526 F. App'x 599, 2013 WL 2097359 (6th Cir. 2013) (unpublished). Again, the defendants' broad reading of *Bass* contravenes the plain language of the EPPA. [Record No. 106, pp. 11-12]

*Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (upholding the dismissal of a *pro se* plaintiff's claim where nominal damages arose only on appeal at oral argument); *see also Fox v. Bd. of Trustees of the State Univ.*, 42 F.3d 135, 137 (2d Cir. 1994) (upholding the dismissal of an action as moot where the plaintiffs requested declaratory and injunctive relief rather than actual or nominal damages).  Here, Laney filed a Rule 26(e) supplementation, and notified the Court and the defendants that he also sought nominal damages.  [*See* Record No. 70, p. 33 n.15.]

Laney's failure to amend his Complaint to include an explicit request for nominal damages does not operate as a bar to his recovery.  *See Layman Lessons, Inc. v. City of Millersville*, 636 F. Supp. 2d 620, 654 (M.D. Tenn. 2008) (the fact that a plaintiff never made an express claim for nominal damages does not prevent recovery of nominal damages in the absence of proof of actual damages).  Accordingly, the Court rejects the defendants' argument that Laney may not receive nominal damages under the facts presented.

### ii.    Ongoing Investigation

The defendants now re-assert that they are entitled to the limited exemption for polygraphs administered during the course of an ongoing investigation.  Under that exemption, the EPPA "shall not prohibit an employer from requesting an employee to submit to a polygraph test if –

   (1)     the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;

   (2)     the employee had access to the property that is the subject of the investigation;

-7-

(3)     the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and

(4)     the employer executes a statement, provided to the examinee before the test, that —

     (A)     sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,

     (B)     is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,

     (C)     is retained by the employer for at least 3 years, and

     (D)     contains at a minimum —

          (i)     an identification of the specific economic loss or injury to the business of the employer,

          (ii)     a statement indicating that the employee had access to the property that is the subject of the investigation, and

          (iii)     a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.[3]

29 U.S.C. § 2006(d).

To invoke the ongoing investigation exemption, an employer must comply with each of these requirements. *Polkey*, 404 F.3d at 1269. The federal regulations explain just how limited the exemption is, noting that an employer engaged in a "fishing expedition" to determine whether an employee engaged in misconduct is not entitled to invoke the exemption. 29 C.F.R. § 801.12(b).

---

[3]     Stoner Mill does not contend that it complied with the requirement of 29 U.S.C. § 2006(d)(4). Instead, it contends that it was not required to comply with this mandate because Laney refused to take an examination.

Here, the circumstances do not fit the exemption. *See id.* First, the plain language of the exemption suggests that it applies where an employer actually administers a polygraph test. 29 U.S.C. § 2006(d) (the EPPA does not prohibit an employer from requesting a polygraph where "*the test is administered* in connection with an ongoing investigation . . .") (emphasis added). And under the exemption, an "ongoing investigation" must necessarily involve economic loss or injury to an employer's business. *Id.* The investigation that Stoner Mill claims it was conducting involved Nancy Harney's papers and documents that were apparently available to her in various other forms. [*See, e.g.*, Record No. 33-7.] Even if Stoner Mill was the bailee of these documents on behalf of non-party Nancy Harney (as the defendants contend), it is not clear that these documents have any bearing on the economic or business status of Stoner Mill itself.[4]

Moreover, Borne and Getty's questioning during the interview spanned many topics involving John Walden's alleged misconduct. [Record No. 29-4, pp. 7 (Borne: "[W]hat do you know about John [Walden] as far as his relationship and being the farm manager? I'll tell you what we're looking for. I mean, we're just looking for things that were done wrong. There's a lot of stuff missing from here.")] Getty testified that he and Borne "were simply there to find out what [Laney] knew" and that Getty "had no grounds at that point to accuse [Laney] of anything." [Record No. 36-1, p. 25] Finally, the issue of access is tenuous. *See* § 2006(d)(2). Laney had no key to the ordinarily-locked house where the allegedly missing documents were stored. [Record No. 29-4]

---

[4]      The documents in question apparently evidence Nancy Harney's ownership of items such as a Native American buffalo head. [Record No. 29-4, p. 17]

Given all of these considerations — that the missing documents did not bear on the business or economic status of Stoner Mill, that Laney did not have independent access to the area where the documents were stored, and that the interviewing defendant admitted that he had no grounds to accuse Laney of stealing the documents — the defendants are not entitled to the limited exemption. Rather, the issue of a polygraph examination arose in a "fishing expedition" as described in 29 C.F.R. § 801.12(b), whereby Borne and Getty were attempting to gather information on a number of subjects before Laney was terminated. The defendants are not exempt from the EPPA.

### iii. Stoner Mill's liability

Stoner Mill also briefly argues that it "has no liability because violating a federal statute was certainly not within the course and scope of the retention" of Borne and Getty. [Record No. 112, p. 4] Stoner Mill contends that Mrs. Harney never discussed the idea of a polygraph examination with Getty and Borne and that Stoner Mill should not be held liable for Getty and Borne's violations of the EPPA. But in the much-discussed e-mail[5] from Borne to Getty, Borne relays that "Nancy [Harney] just called and asked when she could get Scott [Laney] interviewed and off the farm." [Record No. 60-8] At the behest of Mrs. Harney, Borne and Getty conducted the interview the very next day. Under the EPPA, an employer is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2).

---

[5] This e-mail is a double-edged sword for the defendants. Although it enabled the defendants to establish that the decision to terminate Laney occurred prior to June 22, 2012, it also prevents Stoner Mill from arguing that Getty and Borne were not acting on its behalf when they interviewed Laney.

In short, Getty and Borne were acting in the interest of Stoner Mill when they interviewed Laney after Nancy Harney's request. Stoner Mill is not shielded from liability because the interviewers used misguided means while acting on its behalf. Thus, Stoner Mill's attempt to evade liability for this reason is unsuccessful.

**B.     The defendants are not entitled to costs and attorneys' fees.**

Under the EPPA, "[t]he court, in its discretion, may allow the prevailing party (other than the United States) reasonable costs, including attorney's fees." 29 U.S.C. § 2005(c)(3). After the Court entered partial summary judgment in favor of the defendants on the wrongful termination claim, the defendants moved for attorneys' fees, claiming to be a prevailing party.[6]

Given the dearth of case law under the EPPA, *see Polkey*, 404 F.3d at 1268 n.5, it is not surprising that the Court must look outside of cases interpreting this act to properly frame the defendants' motion. Cases involving attorneys' fees in employment discrimination contexts are particularly instructive. Such cases indicate that awarding fees against a losing plaintiff is uncommon. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 41, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."); *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 727 (2d Cir. 1976) (a prevailing defendant should not be permitted attorney's fees routinely, and not simply because he succeeds but where the action is unreasonable, frivolous, or meritless); *Jones v. Continental Corp.,* 789 F.2d 1225, 1232 (6th Cir.

---

[6]     The defendants acknowledge that this request was premature because final judgment had not yet been entered in this case. [Record No. 110; *see also* Fed. R. Civ. P. 54(d)(2).]

1986) ("An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.").

Here, the Court finds that Laney's claims were not frivolous, unreasonable, or without foundation that such an "extreme sanction" would be appropriate. *See Jones*, 789 F.2d at 1232. Rather, as noted above, Laney has prevailed on his claim that the defendants violated § 2002(1) of the EPPA. Discretion dictates against an award of costs and fees in favor of the defendants where the plaintiff is successful on one of his claims. Accordingly, the defendants' motion for costs and fees will be denied.

## IV.

Stoner Mill — through Borne and Getty — requested and suggested a polygraph examination to Laney several times. Despite the dearth of case law interpreting the EPPA, the broad language of the statute, which proscribes an employer or anyone acting on its behalf from even suggesting that an employee take a polygraph examination, both begins and ends the Court's inquiry. Although the defendants demonstrated that they were entitled to summary judgment on one portion of the plaintiff's claims, they are not entitled to costs or fees.

For the reasons stated in the Court's May 5, 2014, Memorandum Opinion and Order, [Record No. 106], and for the reasons outlined above, it is hereby

**ORDERED** as follows:

(1) Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, judgment is **GRANTED** in favor of Plaintiff E. Scott Laney on his claim pursuant to 29 U.S.C. § 2002(1)

of the Employee Polygraph Protection Act. The plaintiff will be awarded nominal damages as a result of this violation.

(2)     Defendants Albert W. Borne, Borne Investigations, Inc., Richard A. Getty, Stoner Mill Farm, LLC, and the Getty Law Group, PLLC's motion for costs, including attorneys' fees [Record No. 110] is **DENIED**.

(3)     The Clerk of the Court is directed to **SEAL** Record Number 29-4 and Record Number 60-9. Within five days of the entry of this Order, the defendants are directed to **FILE** a version of this transcript that complies with the Court's redaction policies.

(4)     A separate Judgment shall issue this date.

This 23rd day of June, 2014.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge